UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60822-CIV-DIMITROULEAS/TORRES

RODNEY JAMES, and all others similarly
situated,

       Plaintiff,

v.

WASH DEPOT HOLDINGS, INC. a Delaware
Corporation qualified to business in the State of
Florida.

       Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

       Plaintiff, Rodney James ("James"), through his counsel, files this Response to Defendant's Motion for Attorney's Fees, and states:

**<u>BACKGROUND</u>**

       James filed this action pursuant to §§ 206 and 207 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*., for failure to pay minimum wage and overtime wages. Additionally, James brought claims for retaliation under 29 U.S.C. § 215(a)(3), the Florida Civil Rights Act (*Florida Statutes* § 760.01 *et seq.*), and the Florida Whistleblower Act (*Florida Statutes* § 448.101 *et seq.*). The Court granted summary judgment in favor of the Defendants as to the latter claims (for retaliation and discrimination), but allowed James's minimum wage and overtime claims to go to the jury.

       The case was tried to a jury on November 27-30, 2006, with the jury returning a verdict in favor of the Defendant as to James' minimum wage claim, but in favor of James as to his overtime claims. The jury awarded James the full amount of money that he sought for overtime,

as he calculated his damages:  $1,746.81.  Later on November 30, 2006, this Court awarded James an equal amount (as is customary) as liquidated damages, after it heard post-trial arguments on that issue, and on that same day issued a Final Judgment in James's favor for $3,493.62.

Upon entry of the Final Judgment, the Defendant is taking the position that it is the prevailing party and James is not.  James is the prevailing party in this case.  The Supreme Court of the United States has held that a party is a "prevailing party" for purposes of an attorney's fee award if the party "prevailed in some significant issue in the litigation and [has] obtained some of the relief [he or she] sought."  *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989); *Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992) (holding that a judgment for any amount of monetary relief—including nominal damages—renders a plaintiff to be a prevailing party).  Unquestionably, James, having received a jury verdict in his favor, and a resulting Final Judgment, is a prevailing party.  Nevertheless, the Defendant has filed a Motion for Attorneys' Fees, and James responds to the Defendant's Motion herein.  The Defendant's Motion seeks fees under *Florida Statutes* § 448.104 and *Florida Statutes* § 768.79, neither of which properly apply to a matter filed in federal court.  The Defendant's Motion should be denied for the following reasons:  1) defense counsel has disclosed precise numbers discussed at the mediation and other communications from the mediation process; 2) Defendant's Motion violates Local Rule 7.3, because defense counsel failed to file a certificate of conferral within 3 days of filing the Motion, and there was no good faith conferral regarding the Motion in any event; 3) *Florida Statutes* § 768.79 does not apply in federal court; 4) *Florida Statutes* § 448.104 does not apply in federal court; 5) the Defendant's offer of judgment was not made in good faith.  These contentions will be discussed in turn.

<u>**MEMORANDUM OF LAW**</u>

**I.    THE DEFENDANT'S MOTION FOR ATTORNEY'S FEES SHOULD BE DENIED AS A SANCTION, BECAUSE DEFENSE COUNSEL HAS DISCLOSED CONFIDENTIAL MEDIATON COMMUNICATIONS, INCLUDING PRECISE SETTLEMENT NUMBERS.**

Local Rule 16.2.G.2 states that:

> 2.    *Restrictions on the Use of Information Derived During the Mediation Conference.*  **All proceedings of the mediation conference, including statements made by any party, attorney, or other participant, are privileged in all respects.**  The proceedings may not be reported, recorded, placed into evidence, made known to the trial court or jury, or construed for any purpose as an admission against interest.  A party is not bound by anything said or done at the conference, unless a written settlement is reached, in which case only the terms of the settlement are binding.

(emphasis added; italics in original).

Second, the law in the State of Florida states that:

> (3)    Each party involved in a court-ordered mediation proceeding has a privilege to refuse to disclose, and to prevent any person present at the proceeding from disclosing, communications made during such proceeding. **All oral or written communications in a mediation proceeding . . . shall be confidential** . . . .

*Florida Statutes* § 44.102 (1997) (emphasis added).

Third, the case law also supports James's position that mediation proceedings are privileged, and that sanctions are warranted, specifically default, when a defendant discloses any such information.  *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979); *Cohen v. Empire Blue Cross & Blue Shield*, 178 F.R.D. 385 (E.D. N.Y. 1998); *Bernard v. Galen Group, Inc.*, 901 F. Supp. 778 (S.D. N.Y. 1995); *United States v. Gullo*, 672 F. Supp. 99, 104 (W.D. N.Y. 1987); *Paranzino v. Barnett Bank of South Florida*, 690 So. 2d 725 (Fla. 4th DCA 1997); *Floyd v. St. Johns County, Florida*, 5 FLW Supp. 440 (Circuit Court St. Johns County Feb. 24, 1998).

The courts do not take lightly a party's breach of the confidential nature of mediation.  In *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979), the court stated:

> It is essential to the proper functioning of the [mediation process] that all matters discussed at these conferences remain confidential.  The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion often leading to settlement and simplification of the issues . . . .  If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute.  This atmosphere if allowed to exist would surely destroy the effectiveness of [mediation]. . . .  [W]e deplore any compromising of the confidentiality of [the mediation process].

Accordingly, pursuant to this Court's inherent powers to curb abusive litigation practices, the Defendant's Motion for Attorneys' Fees should be denied, the Defendant should be defaulted, and/or the Defendant should be severely sanctioned.

In a Florida case, *Paranzino v. Barnett Bank of South Florida*, 690 So.2d 725 (Fla. App. 4 Dist. 1997), the Fourth District Court of Appeal upheld an order granting the appellee's motion to strike pleadings and for sanctions, arising out of the willful and deliberate disclosure of confidential mediation proceedings.  Because of the willful and deliberate disregard of the confidentiality agreement, the appellate court determined that the order of the trial court, striking appellant's pleadings and dismissing the case with prejudice, was not an abuse of discretion, but rather warranted under the circumstances.

In *Floyd v. St. Johns County, Florida*, 5 FLW Supp. 440 (Circuit Court St. Johns County Feb. 24, 1998), the trial judge entered an order requiring the parties to go to mediation. Thereafter, the plaintiff, a county commissioner, disclosed confidential matter from the mediation in violation of Florida's mediation statute, which, as stated above, requires

confidentiality and of which the commissioner was aware.  The trial judge dismissed the

plaintiff's claim with prejudice, stating that although dismissal with prejudice is the most severe

sanction available in a civil case:

> for mediation to be successful, confidentiality must be assured and absolute . . .
> [t]he court finds that the public interest in the mediation process outweighs the
> individual interest of this plaintiff. . . .

In a strongly worded order granting the defendant's motion to strike pleadings and to dismiss

with prejudice, the trial court stated:

> The Court finds that Floyd's conduct in this case shows a pattern of
> deliberate, willful, and contumacious disregard of the Court's orders and
> authority, and of the requirements of the law which justify the imposition of
> the severest of sanctions. . . .  For mediation to be successful, confidentiality
> must be assured and absolute.  Only if the parties are free to disclose the
> strengths and weaknesses of their respective cases can the mediators have any
> chance of success.  To allow a party to disclose those confidences to further the
> interest of his or her case would deal the entire mediation process a death blow.

*Id.*  Like the pattern of conduct in *Floyd*, the Defendant in the instant case has indeed engaged in

a pattern of conduct just as contumacious and willful.  As in *Floyd*, *Galen*, and *Paranzino*, the

most severe of sanctions is warranted in this case against the Defendant; namely, denial of its

Motion and default with prejudice.  What is further troubling here is that the Defendant's

disclosure was purely gratuitous, because the Defendant has filed an "Emergency Motion"

requesting that the Court disregard the mediation disclosures and allow the Defendant to submit

a "Substituted Motion" without the disclosures, and the substituted motion does not appear to

contain any material differences (other than a deletion of the mediation information that was

disclosed) and therefore there appears to have been no reason to disclose the mediation

information except to unduly and improperly prejudice James before the Court.  Further, the

characterization of the mediation proceedings is in fact inaccurate by the Defendant, but James

cannot rectify those misrepresentations, because to do so would require him to violate the confidentiality aspect of mediation, something James and his counsel will not do.

Mr. Munoz filed a petition for attorneys fees based on his claim of experience and expertise in employment law, and he indicates therein that he is a board certified employment attorney, yet he claims (in his Emergency Motion) that he was not aware of the fact that matters discussed in a mediation, including specific demands and counteroffers, are to be treated confidential and not disclosed to the Court or in public filings with the Court. Simply stated, that is not believable. Every mediator at the beginning of every mediation announces that the matters discussed in the mediation are to be treated confidentially by all attendees and not to leave the mediation room.[1] For Munoz to say that he is not aware of that and is unaware of the Local Rule regarding the nature of confidentiality surrounding the mediation process is something the Court will have to decide. It is James's concern that the improper disclosure was accomplished strictly to prejudice James not only in Defendants' Motion for Attorneys Fees but also against James concerning James Motion for Attorneys' Fees and his Motion to Tax Costs. The Court should not countenance an attorney discussing the substance of mediation, which is sacrosanct. Further, Munoz does not indicate even if he did not know the rule, why he felt it was necessary to even bring this information to the Court, because, as stated above, it is clear that the disclosure was gratuitous.

A simple apology or request that the documents be returned does not correct the flagrant violation of the rules that have taken place, that document has been sitting in the Court file since December 21, 2006, and it is unclear how many have reviewed it, since it is a public record.

---

[1] While this statement is made generally, James takes no position as to whether the mediator in this case stated (at the beginning of the mediation or at any other time thereafter) that the mediation and all statements made thereat were confidential, because to do so would violate the strict confidentiality that governs the mediation process, as stated above.

Their expert further reviewed the motion for fees and the underlying information supporting it. The expert apparently chose not to advise Munoz that such disclosure was improper, creating issues as to his level of expertise.   As Judge Gonzalez has recently noted about it being impossible to unring the bell,

> The Moving Finger writes:  and, having writ,
> Moves on:  nor all thy piety nor wit
> Shall lure it back to cancel half a line
> Nor all they tears wash out a word of it.

*Harley v. The Health Ctr. of Coconut Creek, Inc.*, -- F. Supp. 2d --, 2006 WL 3770995 (S.D. Fla., Dec. 21, 2006) (citing Omar Khayyam).  It is likewise impossible to unring the bell here.  The disclosure of the mediation discussions with the specificity stated therein requires strict scrutiny by the Court and appropriate measures that such behavior by counsel should never happen again.

## II.   THE DEFENDANT'S MOTION FOR ATTORNEY'S FEES SHOULD BE DENIED, BECAUSE IT VIOLATES LOCAL RULE 7.3

Local Rule 7.3 states as follows, in pertinent part:

> **A.   Upon Entry of Final Judgment or Order.**   Any motion for attorneys fees and/or to tax costs must specify:  the judgment and the statute, rule, or other grounds entitling the moving party to the award; . . . shall be supported by particularity; shall be verified . . . .   Any such motion shall be accompanied by certification that counsel has fully reviewed the time records and supporting data and that the motion is well grounded in fact and justified.  In addition, counsel filing the motion shall confer with counsel for the opposing party and shall file with the Court, within three (3) days of the motion, a statement certifying that counsel has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the motion, the results thereof and whether a hearing is requested.

The Defendant's Motion violates certain provisions of Local Rule 7.3, which requires that the Defendant's Motion be denied, just as violations of Local Rules in general require denial. *Damon v. Fleming Supermarkets of Florida, Inc.*, slip op. (Case No. 97-0230-CIV-LENARD) (S.D. Fla. Jan. 9, 1999) (adopting report and recommendation of Magistrate Brown striking

motion to tax costs from the record for defendant's failure to file certificate of conferral as required by Local Rule 7.3); *Longariello v. School Bd. of Monroe County*, 1996 LEXIS 21661, at *6 (S.D. Fla. 1996) (denying motion for summary judgment in part upon movant's failure to comply with Local Rule 7.5 by not filing a concise statement of facts); *Hoglund v. Limbach Constructors, Inc.*, 1998 LEXIS 8577 at *9-14 (S.D. Fla. 1998) (holding that a party's failure to comply with clear mandate of Local Rule 26.1.G.6(b) constituted waiver of party's privilege objection over production of her diary); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329-30 (6th Cir.), *cert. denied*, 414 U.S. 858 (1973) (holding that the district court properly denied a motion to compel for failure to adhere to the requirement of the local rules that the moving party must "notify the court of its attempts to resolve the controversy").

Moreover, the courts, including the former Fifth Circuit in a binding opinion, have issued strong language to the effect that a court's local rules are more than mere inconveniences, but rather must be obeyed. *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939, 943 (5th Cir. 1964) (stating that "Local Rules for the conduct of trial courts are desirable and necessary, and such rules should not be ignored or declared invalid except for compelling reasons"); *Wiss v. Weinberger*, 415 F. Supp. 293, 294 n.4 (E.D. Pa. 1976) (stating that "non-compliance with any local rule is a practice to be *strongly condemned* and one which will be penalized if the circumstances warrant such action") (emphasis in original).  The Defendant's multiple violations of Local Rule 7.3 require that its Motion be denied.

Local Rule 7.3 requires that the parties submit a certificate of conferral within three (3) days of the filing of the Motion for Attorneys Fees.  S.D. Fla. L.R. 7.3; *CBS Broadcasting Inc. v. Primetime 24 Joint Venture*, 48 F. Supp. 2d 1342, 1362-63 (S.D. Fla. 1998) (holding that "Rule 7.3 requires the parties to confer and that the moving party file a certification regarding the time

records, the motion, and the conference with counsel"). Further, the courts in the Southern District of Florida have specifically denied motion for attorneys fees and costs specifically because the moving party failed to file the certification within 3 days of filing the motion. *Damon v. Fleming Supermarkets of Florida, Inc.*, slip op. (Case No. 97-0230-CIV-LENARD) (S.D. Fla. Jan. 9, 1999) (striking motion for failure to follow Local Rule 7.3's three-day conferral requirement).

In this case, no such certificate of conferral was submitted by the Defendant, and when undersigned counsel asked the Defendant to do so, Munoz stridently stated that Local Rule 7.3 contains no such requirement. Such failure to follow the Local Rules requires denial of the Defendant's Motion. *Id.*

Further, no actual, good faith conferral occurred. Because the Defendant did not adequately confer before the filing of his Motion, it should be denied. Local Rule 7.3 requires actual, good faith conferral. No actual conferral occurred. The courts have held that a reasonable attempt at conferral is not to send one letter, and fail to follow-up at all, on the subject. *Hoelzel v. First Select Corp.*, 214 F.R.D. 634 (D. Colo. 2003). After Defendant sent one letter stating cryptically that it intended to file a Motion for Attorneys Fees, it simply filed the Motion a couple days later. This is not the sort of good faith conferral that the Rule contemplates. While the conferral requirement is similar to the conferral requirement concerning discovery matters, or the filing of other motions, arguably, Local Rule 7.3 requires more specific and detailed conferral, hence the three-day requirement to file the certificate.

In any event, the District of Colorado has a similar local rule regarding conferral to the rule (concerning conferral before filing discovery motions, which is analogous to the situation here) in the Southern District of Florida. *Id.* at 635. The *Hoelzel* court noted that actual effective

communication is required before a motion to compel is filed, which typically requires that the parties actually speak and engage in negotiations. *Id.* The court noted as follows:

> Rule 7.1.A serves a particularly important function in connection with discovery disputes because the parties, through negotiations, frequently are able to narrow the discovery requests in a way which eliminates the need for judicial intervention. . . . Without meaningful negotiations by the parties, the courts would be flooded with discovery motions.

*Id.* The court further noted that "the [conferral] requirement is not satisfied by a party making a demand for compliance." *Id.* The court further noted that "[t] confer means "'to hold a conference; compare views; consult together.'" *Id.* (quoting *The American Heritage Dictionary of the English Language* 278-79 (9th ed. 1971)). The court held that "[t]he rule is not satisfied by one party sending a single e-mail to another party", and noted that at least one other court was in agreement with that holding. *Id.* (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996). Further, the court noted that one court found that there was not meaningful conferral because even though there were four telephone calls and two letters, the court found that the quality of the conferral was not meaningful. *Id.* (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456 (D. Kan. 1999)). In this case, James requests that the Court find that simply sending a demand for the information on one occasion to be inadequate conferral, and to deny the Defendant's Motion on that basis.

Because the Defendant's Motion does not contain the appropriate companion certificate of conferral and because no actual conferral took place as required by Local Rule 7.3, it is in violation of that rule, and therefore the Defendant's Motion should be denied. *Damon v. Fleming Supermarkets of Florida, Inc.*, slip op. (Case No. 97-0230-CIV-LENARD) (S.D. Fla. Jan. 9, 1999) (striking motion for failure to follow Local Rule 7.3's three-day conferral requirement).

### III.   *FLORIDA STATUTES* § 768.79 **DOES NOT APPLY IN FEDERAL COURT.**

In cases where there is federal question jurisdiction,[2] the courts have developed a test to determine whether § 768.79 applies.  The main concern is whether an award of fees pursuant to the Florida statute would impermissibly conflict with federal substantive law, and the courts use a reverse-*Erie* analysis.  The two-part test is:  1) does the state law conflict with substantive federal law, and 2) does the state law affect remedies peculiar to the applicable substantive federal law.  *Garan Inc. v. M/V AIVIK*, 907 F. Supp. 397, 399 (S.D. Fla. 1995).  If the answer to either prong of the test is yes, then the court must hold that the state offer of judgment is inapplicable.  *Id.*  In *Garan*, the court held that applying § 768.79 in the matter before it, a maritime case, would result in a situation where a defendant would obtain attorneys fees contrary to federal maritime common law, because under federal maritime law, a prevailing defendant is generally not entitled to attorneys fees "absent federal statutory authorization for an award of attorneys fees".  *Id.*

Here, like *Garan*, defendants in employment discrimination cases are not generally entitled to attorneys fees, absent a finding that the case was frivolous.  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978).[3]  In *Christiansburg Garment Co.*, the Supreme Court

---

[2] While this case arose under diversity jurisdiction, James has a retaliation claim under federal law, 29 U.S.C. § 215(a)(3), the anti-retaliation provision in the FLSA, and for Supremacy Clause purposes, since substantive Florida law cannot apply to that claim, it should not be applicable to the diversity jurisdiction claims under *Florida Statutes* § 448.104.

[3] *Christiansburg Garment Co.* holds as follows with respect to under what circumstances attorneys' fees should be assessed against a plaintiff in a Title VII case:

> a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it became clearly so.

*Christiansburg Garment Co.*, 434 U.S. at 422.  In subsequent cases, the Supreme Court has made clear that the standard for awarding attorney fees is a stringent one.  *Hughes v. Rowe*, 449 U.S. 5, 14 (1980).

In its decision interpreting *Christiansburg Garment Co.*, the Eleventh Circuit in *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985), set forth three factors to be applied to determine whether a claim is frivolous:  1) whether the plaintiff established a prima facie case; 2) whether the defendant offered to settle; and 3) whether the district court dismissed the case prior to trial or held a full-blown trial on the merits.  A case is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation."  *Id.* at 1188.  A court must not focus on whether the claim was ultimately successful in determining frivolity.  *Id.*  "While these general guidelines can be discerned from the case law, they are general guidelines only and not hard and fast rules.  Determinations regarding frivolity are to be made on a case-by-case basis."  *Id.* at 1189.  In fact, the Eleventh Circuit recently held that "*Sullivan* does not create a bright line checklist nor does it permit of a mechanical application." *Bonner v. Mobile Energy Servs. Co.*, 246 F.3d 1303, 1304 n.9 (11th Cir. 2001).

The three *Sullivan* factors must be read *in pari materia* with *Christiansburg*, since the overriding inquiry is whether the case was frivolous.  *Id.* (noting that courts are to remain cognizant of the definition of frivolity—whether an argument is "so lacking in *arguable* merit as to be groundless or without foundation").  A defendant is not entitled to an award of attorney fees and costs simply because it prevailed on summary judgment.  *Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995) (emphasis added).

Additionally, the *Christiansburg* and *Sullivan* framework must also be tempered with the ethical obligations contained in the State of Florida's Bar Rules, which state that attorneys have the following duty:  "As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."  *Rules Regulating the Florida Bar*, Preamble to Chapter 4.

The Eleventh Circuit has noted the importance of the following policy consideration:  "Policy concerns militate against awarding attorney's fees to defendants in civil rights cases because such practice may discourage plaintiffs from bringing civil rights lawsuits."  *Sayers v. Stewart Sleep Ctr., Inc.*, 140 F.3d 1351, 1353 (11th Cir. 1998).  In light of this policy consideration, the law in this Circuit provides that attorney fees are appropriate only when:  1) when resolved via "motion for summary judgment . . . [where] the plaintiffs did not introduce any evidence to support their claims", *Bonner*, 246 F.3d at 1304, and 2) "the district court finds all testimony to be 'absolutely incredible, and pure fabrication.'"  *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999) (quoting *Jones v. Texas Tech. Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)).  In the *Bruce* case, the plaintiff was unable to satisfy any of the four elements necessary to his prima facie case, the defendant made no offer to settle, and the case was resolved on the merits as a matter of law before trial; nevertheless, the Eleventh Circuit reversed the district court's award of fees.  *Id.* at 952, 953.

James will briefly discuss all three factors in turn.  Concerning the ability to establish a prima facie case of retaliation and show pretext, the Court found that James was not able to establish causation. The case *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986), is dispositive of the issue as to whether James can prove causation, because that case, a retaliation case, holds that "t[]he short period of time, however, between the . . . complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation."  In this case, James complained to Andrew White in the Defendant's corporate office two weeks before he was fired.

In this case, the Defendant concedes that it offered to give James $50,000.00 (in a Rule 68 offer of judgment) to settle the federal case in late October, 2005.  Certainly, such an offer warrants the conclusion that the case was not frivolous.  Further, as Defendant's own Motion points out, the Defendant provided an offer of judgment for over $10,000 shortly before trial.  As one court has so held:

> [The defendant offered $10,000.00 to settle the case.]  Significantly, if the Defendant thought the claim was frivolous and unreasonable at the time, why would it offer any amount to settle? Presumably, the Defendant thought that the Plaintiffs' claim was worth something, ten thousand dollars ($10,000.00) at least.

declared the following admonition: "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Accordingly, to grant an award of fees to the Defendant pursuant to § 768.79, would allow the Defendant to obtain such fees through the back door, when they are prohibited from obtaining such fees through the front door. The Defendant does not even attempt to argue that James's case was frivolous, nor has the Defendant filed such a motion in this case. Obviously, fees cannot be awarded pursuant to § 768.79.

The Eleventh Circuit has just issued an opinion where it reaffirms that attorneys fees cannot be assessed against a civil rights plaintiff outside of an explicit finding under *Christiansburg* that the case was frivolous. *Young v. New Process Steel, LP*, 419 F.3d 1201 (11th

---

*Baggs v. City of South Pasadena*, 958 F. Supp. 586, 589 (M.D. Fla. 1999). The Defendant cites no authority that $50,000.00 or $10,000.00 is "nuisance value" for such a case. The *Baggs* case impliedly holds that $10,000.00 is in fact not nuisance value.

The Defendant is improperly relying on alleged statements made at the mediation to argue that the amount of money that James requested (which it evidently believes was exorbitant) as being relevant to whether $50,000.00 or $10,000.00 was nuisance value, and to show that James wanted far more than such an amount. The Eleventh Circuit has expressly rejected the Defendant's argument, that such evidence is relevant. In *Sayers v. Stewart Sleep Ctr., Inc.*, 140 F.3d 1351, 1354 (11th Cir. 1999), the court held that "[w]e decline to consider the amount of damages sought [by the plaintiff] in determining whether [defendant] was entitled to attorney's fees." The court then held that only the defendant's settlement offer was relevant, and that such an offer is [a factor weighing in [plaintiff's] favor." *Id.*

Furthermore, there is a reported Eleventh Circuit case where the Court held that attorney's fees were not justified even though the defendant made no offer to settle. *Bruce v. City of Gainseville*, 177 F.3d 949 (11th Cir. 1999). Accordingly, the *Sullivan* factors weigh in favor of James, and require that the Defendant's Motion for Fees be denied.

Additionally, the courts have held that summary judgment should be denied if an unemployment compensation appeals referee finds that the plaintiff did not engage in misconduct. *Kendall v. C.F. Indus.*, 624 F. Supp. 1102 (N.D. Ill. 1986). In this case, the Unemployment Compensation Appeals Referee found that James did not commit misconduct. The Unemployment Compensation Appeals Referee's findings are strong evidence that James's claim was not frivolous. *Bonner v. Mobile Energy Servs. Co.*, 246 F.3d 1303, 1305 (11th Cir. 2001) (holding that attorney's fees were not warranted relying in significant part on the fact that a neutral made a finding that the defendant did not fire the plaintiff for just cause).

Cir. 2005).  The issue in *Young* was whether a district court could require a civil rights plaintiff to post an appeal bond under Federal Rule of Appellate Procedure 7, without first making a finding that the plaintiff's case was frivolous.  The court held that while a literal reading of Rule 7 would result in an unsuccessful civil rights plaintiff having to post an appeal bond, even though the appeal might have merit, and that that would give incentive to such plaintiffs to forego those appeals, which would be directly contrary to Congress' intention that individuals would bring their own suits under the civil rights laws to act as their own attorney generals (and that such an intention was "Congress' chosen instrument"), as follows:

> [A] victorious defendant in a civil rights action is not the 'chosen instrument of Congress,' few defendants need any incentive to defend themselves when sued, and a losing plaintiff in a civil rights case has not been found to have violated anyone's civil rights.  Hence the rule announced in *Christiansburg* that defendants who win civil rights lawsuits generally cannot recover their attorneys' fees from plaintiff.
>
> \*   \*   \*
>
> Applying the reasoning of the *Christiansburg* decision to the Rule 7 context, a general rule requiring a losing plaintiff in a civil rights case to post a bond that includes the defendant's attorney's fees on appeal would discourage and might prevent some appeals for which there is a good basis.  As a result, individuals would be prevented from acting as private attorneys general to pursue through the appellate process the enforcement of the civil rights acts.  That would be bad policy at the appellate stage of the process for the same reasons it is at the trial stage.

*Young*, 419 F.3d at 1206.  If Federal Appellate Procedure Rule 7 cannot by-pass the *Christiansburg* doctrine, then certainly *Florida Statutes* § 768.79 cannot.  The *Young* case is binding proof of that, and requires that the Court reconsider the grant of attorneys fees.  The state law (*Florida Statutes* § 768.79) clearly runs counter to the *Christiansburg* doctrine.  Further, it runs counter to *Erie*, because Rule 68, with its offer of judgment provision, clearly takes precedence, and was meant to occupy the field.  James claims consisted of some Florida

employment claims and some federal law claims, and the Defendant issued an offer of settlement pursuant to Florida law only.  The Defendant should have made the offer pursuant to Rule 68, which clearly works to occupy the field, and is thus supreme over the Florida statute, as set forth above.  The case law relied on by the Defendant is inapposite, as the cases either do not pertain to employment law—*Evans* was a defamation suit, *McMahan* was not an employment case; *Maytronics* was a case involving swimming pool companies suit each other; *Muegge* was a negligence case; *Martin K. EBY Constr. Co.* was a breach of contract case—(other than *Morris* which is on appeal and *Scully v. Store-All Management*, which is inapposite because the plaintiff in that case did not argue that Rule 68 occupied the field, apparently because there were no federal claims in the case; the plaintiff largely argued that the Court could exercise its discretion not to award fees, and that it should do so because of the equities of the case).

    **IV.**   ***FLORIDA STATUTES* § 448.104 DOES NOT APPLY IN FEDERAL COURT EITHER, AND THE COURT SHOULD NOT EXERCISE ITS DISCRETION TO ALLOW FEES UNDER § 448.104 IN ANY EVENT.**

    *Florida Statutes* § 448.104 does not apply in federal court for the same reasons as *Florida Statutes* § 768.79.

    Additionally, the Court should not exercise its discretion to allow fees under § 448.104, particularly given the fact that the Defendant improperly blew out information from the confidential mediation.  Although § 448.104 states that a court may award fees to the prevailing party, to do so in the context that this cases arises before the Court is unjust, because the Defendant prevailed concerning the Florida claims, and those claims were otherwise brought in good faith and had arguable legal merit, and thus to award fees would run afoul of the *Christiansburg* standard.

Numerous cases hold that when a defendant prevails under § 448.104, and the Court believes that the claim was brought in good faith and had arguable legal merit, the defendant should not be awarded fees. *Stewart v. Town of Zolfo*, 1998 WL 776848, *3 (M.D. Fla. 1998) (denying defendant's motion for attorney's fees under the Florida Whistleblower Act when it was brought in good faith and had arguable legal merit); *Sherry Manufacturing Co. v. Towel Kings of Florida, Inc.*, 822 F.2d 1031, 1034 (11th Cir. 1987); *McKenzie v. EAP Management Corp.*, 1999 U.S. LEXIS 17716 at *7-8 (S.D. Fla. 1999) (Dimitrouleas, J.). As the court explained to Stewart, "being a prevailing party [on a whistleblower claim] *does not automatically* entitle [a] Defendant to attorney's fees." *Stewart*, 1998 WL 776848 at *3 (emphasis added). Rather, "the fact that a losing party has acted in good faith or that his legal position had arguable merit will justify an exercise of the district court's discretion in deciding not to award fees." *Id.* at *3 (quoting *Sherry Manufacturing Co. v. Towel Kings of Florida, Inc.*, 822 F.2d 1031, 1034 (11th Cir. 1987)). The court was clearly applying a *Christiansburg* analysis to this case. This is what James requests that the Court do, which requires the conclusion that the Defendant is not entitled to any fee award, as set forth *infra*, note 3. The case *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986), is dispositive of the issue as to whether James can prove causation, because that case, a retaliation case, holds that "t[]he short period of time, however, between the . . . complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation." In this case, James complained to Andrew White in the Defendant's corporate office two weeks before he was fired. Moreover, as set forth in note 3, James was offered $50,000 by the Defendant in an offer of judgment in October, 2005. This case was clearly not frivolous, and the Court has not previously suggested that it was.

Finally, the Defendant seeks thousands of dollars of attorneys fees on matters that involve the wage and hour claims that James prevailed on.  Thus, the reasonableness of the Defendant's fee request is in serious doubt.

### V.  THE OFFER OF JUDGMENT IS VOID BECAUSE IT WAS A NOMINAL OFFER MADE IN BAD FAITH.

The courts in Florida have held that when offers of judgment under § 768.79 are made in bad faith, simply to shift the cost of the litigation to the plaintiff, they are invalid and unenforceable.  *Eagleman v. Eagleman*, 673 So. 2d 946 (Fla. 4th DCA 1996); *Stewart Select Cars, Inc. v. Moore*, 619 So. 2d 1037 (Fla. 4th DCA 1993); *Stouffer Hotel Co. v. Teachers Ins.*, 944 F. Supp. (M.D. Fla. 1995); *Florida Statutes* § 768.79(7)(a).  In *Eagleman*, the court held that in cases where liability is reasonably and realistically disputed (as this case), the offer of judgment need not equate with the total amount of possible damages, but

> [t]he offer should bear a reasonable relationship both to the amount of damages and a realistic assessment of liability.  For example, if the damages in a case have the potential for a verdict of $100,000 and the defendant has realistically and reasonably assessed the chances of the plaintiff prevailing at 25%, then a $25,000 offer might very well be a good faith offer.
>
> . . . [T]rial courts should view with considerable skepticism nominal offer which bear no reasonable relationship to damages and which are not founded upon a reasonable and realistic assessment of liability.  Such nominal offers cannot advance the statutory purpose of encouraging settlement, but instead serve no purpose other than to lay a predicate for a subsequent award of attorney's fees as occurred here.

*Eagleman*, 673 So. 2d at 948.   The court struck as invalid an offer for $500.00.

The offer was a nominal bad faith offer here, because by the time it was made—October 12, 2006, a year and one-half after contentious litigation, the attorney fee hours alone were already just shy of $300,000.00 for both parties.  Moreover, by October, 2006, James's back pay was already well in excess of $30,000.00, as it took him awhile to find suitable employment until

well after he was fired, plus under the FLSA he is entitled to double his back pay as liquidated damages. Back pay consists of the difference in pay (plus benefits) currently being earned by James, compared to the pay that James should have earned but for the discrimination, had he continued working for the Defendant, calculated on a quarter-to-quarter basis, as set forth in Eleventh Circuit case law. *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251 (11th Cir. 1997); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975); and *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990). *Back pay is calculated from the time that Pettway was discriminated against to the date of judgment. Nord v. United States*, 758 F.2d 1462, 1470-73 (11th Cir. 1985); 42 U.S.C. § 2000e5(g)(1). James was presumptively entitled to back pay. *Moody*, 422 U.S. at 405.

Additionally, James was entitled to potentially unlimited compensatory damages and $100,000 in potential punitive damages. The latter two damages are available simply by proving their entitlement by a preponderance of the evidence. Under these circumstances, the $10,000.00 offer of judgment was submitted in bad faith.

### VI.   THE DEFENDANT FAILS TO POINT OUT THAT UNDER THE OFFER OF JUDGMENT STATUTE, THE DEFENDANT CAN ONLY RECOVER FEES FROM THE DATE THE OFFER OF JUDGMENT WAS FILED TO THE DATE OF JUDGMENT (NOVEMBER 30, 2006), AND ONLY IF THE OFFER WAS FILED WITH THE COURT, AND IT WAS NOT FILED UNTIL DECEMBER 21, 2006

The offer of judgment statute states, in pertinent part, that:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorneys' fees incurred by him or her on the defendant's behalf pursuant to a policy of liability or other contract from the date of filing of the offer if the judgment is one of no liability . . . .

*Florida Statutes* § 768.79(1).  In this case, the offer of judgment was not ever filed as a stand alone document (at least not from undersigned counsel's perusal of the docket), and was only filed eventually as an exhibit only with the Defendant's Motion for Attorney Fees, on December 21, 2006.  Therefore, concerning the relevant time period for purposes of the statute, the offer was not filed until after the Final Judgment was entered, and therefore there are no attorneys fees between the time the offer of judgment was filed and the Final Judgment was entered.  If the Court were to interpret the term "filed" in the statute as the word "served", the time period that the Defendant would be entitled to fees (if the Court is going to allow any under the statute, which it should not) is from October 12, 2006 to November 30, 2006.

### VII.  IF THE COURT GRANTS ENTITLEMENT TO FEES, JAMES REQUESTS THAT HE BE ALLOWED TO CONTEST THE REASONABLENESS OF THE FEES SOUGHT BY DEFENDANT.

If the Court grants entitlement to fees, James requests that he be allowed to contest the reasonableness of the fees sought by the Defendant.

### <u>CONCLUSION</u>

For the foregoing reasons, James respectfully requests that the Court deny the Defendant's Motion for Attorneys Fees.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 8, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Peter W. Zinober, Esq., Zinober & McCrea, P.A., 201 East Kennedy Boulevard, Suite 800, Tampa, Florida 33602) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Glasser, Boreth, Ceasar & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  Glabor@aol.com

By___s/Chris Kleppin_____
        Chris Kleppin
        Fla. Bar No. 625485

C:MyDocuments/James/Plf'sResponsetoMforAttyFees01/08/07