## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 05-60822-CIV-DIMITROULEAS/TORRES

**RODNEY JAMES, and all others similarly
situated,**

      **Plaintiff,**

**vs.**

**WASH DEPOT HOLDINGS, INC.,
a Delaware corporation qualified to do business
in the State of Florida,**

      **Defendant.**

_____/

## WASH DEPOT'S RESPONSE TO PLAINTIFF'S AND HIS COUNSEL'S
## VERIFIED MOTION FOR ATTORNEY'S FEES

After prevailing on only one of six claims (four of which were disposed of at the summary judgment stage), and receiving barely 0.5% of the damages claimed in Rule 26 disclosures, Plaintiff and his counsel have submitted a request for attorneys' fees totaling more than ***one hundred times*** the amount of damages (including liquidated damages) awarded. As set forth in further detail below, the Motion for Attorneys' Fees by Plaintiff and his counsel (the "Motion") should be denied, given the fact that Defendant prevailed on 99.5% of Plaintiff's claim for damages, given the gross disproportion between the fees incurred and the small damage award, and given Plaintiff's unreasonable litigation tactics.

If fees are awarded, they should be limited to a nominal amount for the reasons mentioned in the prior paragraph and for the following additional reasons. First, the Motion effectively concedes that Plaintiff and his counsel are not entitled to fees on the claims on which Defendants prevailed, as evidenced by the fact that the Motion asserts that they are not seeking fees for work expended in pursuit of those claims. [*See* Motion at pp. 3-4.] However, despite the conclusory assertion that the Motion does not seek fees for work on

claims on which Defendant prevailed, a review of the Motion and Plaintiff's billing records shows that Plaintiff failed to properly segregate the work performed, and that the Motion in fact seeks substantial sums for fees incurred, in whole or in part, in pursuing those claims. Moreover, for many of the time entries, there is no possibility of separating counsel's time and allocating it among the various claims; this is not because the claims are interrelated, but rather because counsel's billing records are insufficient to permit such allocation. Plaintiff bears the burden of establish the amount of fees, if any, to which he is entitled. Because Plaintiff has conceded he is not entitled to fees for work performed on the claims on which Defendant prevailed, to the extent his counsel's records do not permit allocation of time to the FLSA back wage claims, his claim for fees should be denied.

Finally, to the extent the Motion seeks fees for time entries that actually pertain to the FLSA back wage claims, the fee request is based on inflated hourly rates and the expenditure of unnecessary work. For example, the Motion claims that trial counsel, Mr. Kleppin, should be compensated at a rate of $375.00, despite the fact that he is only a six-year attorney. This rate is higher than the rate claimed by his fee expert, who has more than twice Mr. Kleppin's experience, and more than 50% more than the hourly rate of Defendant's lead trial counsel, who is Board Certified in Labor and Employment Law and has been practicing nearly three times as long as Mr. Kleppin. In addition to seeking $375.00 per hour for Mr. Kleppin's time at trial, Plaintiff and also seeks fees for Mr. Boreth, an attorney with 40 years of experience, spending 27 hours in the courtroom monitoring Mr. Kleppin's work. All this despite the fact that at trial Plaintiff claimed less than $3,500.00 in damages.

## I.

## RELEVANT FACTUAL BACKGROUND

In this lawsuit, Plaintiff asserted claims of: 1) race discrimination under the Florida Civil Rights Act ("FCRA") (asserting that he was discriminated against when he was suspended and terminated, and that he was paid less than non-black employees), 2) retaliation under the FCRA, for alleged complaints of race discrimination; 3) retaliation under the Fair Labor Standards Act ("FLSA"), for alleged complaints about his pay; 4) retaliation under the Florida Whistleblower Act ("FWA"), for alleged complaints about

discrimination, his pay and the alleged hiring of illegal workers; 5) failure to pay minimum wage under the FLSA; and 6) failure to pay overtime under the FLSA.[1]  In his Rule 26 disclosures, Plaintiff calculated that he had suffered more than $630,000.00 in damages.[2]

On November 21, 2006, the Court entered an Order granting summary judgment for Wash Depot on four out of Plaintiff's six claims, eliminating claims representing more than $600,000.00 of the damages claimed and leaving for trial only the FLSA minimum wage and overtime claims.  At trial, Plaintiff asked the jury to award less than $3,500.00 in damages on those two claims combined.  After a three-day trial, the jury found for Wash Depot on the claim for failure to pay minimum wage.  The jury found in Plaintiff's favor on the overtime claim, awarding $1,746.81.  After liquidated damages, Plaintiff's total judgment in the matter was $3,493.62 – barely 0.5% of Plaintiff's Rule 26 damages calculation.

Despite the lack of success of Plaintiff's lawsuit and the minimal amount of his recovery – particularly notable when compared to the $630,000.00 he claimed as damages – Plaintiff now seeks nearly $400,000.00 in attorneys' fees, the full amount of which, under his retainer agreement, his counsel is entitled to retain.  As mentioned above, Plaintiff claims that this amount reflects only time spent on the FLSA claim.

---

[1] The FLSA claims and the FWA claim were originally filed in federal court, in the case styled *Rodney James v. Wash Depot Holdings, Inc.*, Case No. 05-60822-CIV-DIMITROULEAS/TORRES.  Plaintiff then filed an amended complaint in that action, withdrawing the FWA claim.  He then filed his discrimination and retaliation claims, including the FWA claim, in Broward County Circuit Court, in the case styled *James v. Wash Depot Holdings, Inc., et al.*, Case No. 0515413.  The latter case was removed to this Court on March 21, 2006, and the matters were consolidated by the Court's May 9, 2006 Order into the instant consolidated action.

[2] A copy of the Rule 26 disclosures is attached hereto as Exhibit A.  In those disclosures, Plaintiff claimed more than $10,000.00 in unpaid minimum wage and more than $20,000.00 in unpaid overtime and liquidated damages on his FLSA back wage claims.  On the retaliation and discrimination claims, he claimed:  $20,000.00 in back pay; $182,000.00 in front pay; $100,000.00 for lost future earnings capacity; and $300,000.00 in compensatory damages.  Plaintiff asserted a claim for punitive damages in connection with his discrimination and retaliation claims, but the disclosures did not include a statement of the amount of punitive damages sought.

## II.

## ARGUMENT

A.   **Plaintiff's Lack of Success And Unreasonable Litigation And Settlement Positions Make Any Fee Award Unreasonable, And Justify A Denial Of Fees**

The Fair Labor Standards Act provides that a court "shall . . . allow a *reasonable* attorney's fee to be paid" to a prevailing plaintiff. 29 U.S.C. § 216(b) [emphasis supplied]. The existence of the word "reasonable" confers significant discretion upon the court to determine fee entitlement. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541 (11th Cir. 1985). As the Southern District has recognized, "There are special circumstances that can render an award of attorney's fees [in an FLSA matter] unjust . . ." *Goss v. Killian Oaks House Of Learning*, 249 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying motion for attorney's fees where Plaintiff was determined to be the prevailing party in an FLSA case, where maximum recovery was $316.00, case settled for less than $200.00, and plaintiff's counsel sought $16,000.00 in fees). "An entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney's fees without any threat of sanction." *Id.*

Although the *Goss* matter involved a nuisance settlement, the reasoning underlying the *Goss* decision is applicable with equal force here. Plaintiff and his counsel considered the claim for failure to pay overtime to be the "main" theory in the case. *See* Motion at pp. 11-12. At trial, they asserted that this "main" claim was worth less then $2,000 in damages, an amount which, if in state court, would relegate the claim to small claims court because it would not even meet the threshold for a county court case.

In contrast to the position they ultimately took at trial, in both Plaintiff's initial Rule 26 disclosures and his supplemental disclosures, Plaintiff's counsel calculated the alleged back pay damages due under the FLSA using a methods which had no basis in the FLSA or the implementing regulations. As a result, Plaintiff initially claimed that he was entitled to more than $20,000.00 in lost wages under the FLSA.[3] Ultimately, at trial, Plaintiff asked the jury to award less than $3,500.00 in on those claims.

---

[3] *See* Exhibit A.

Further, in the initial Complaint in this case, then in a separate state court action and ultimately in this case after consolidation, Plaintiff dramatically drove up the cost of litigation by supplementing the FLSA back wage claims with flimsy claims of retaliation and discrimination.[4]  Plaintiff and his counsel knew, or should have known, that those claims were weak, if not baseless; Plaintiff failed to even establish a *prima facie* case on those claims at summary judgment.  Nonetheless, they took the position that Plaintiff was entitled to more than $600,000.00 in damages for those claims (despite his current position that he and his counsel considered those claims secondary to his overtime claim).

Instead of making a straightforward calculation of damages on his "main" overtime claim and presenting a reasonable demand to Defendant at the early stages of litigation, which may well have led to settlement and thereby avoided protracted litigation, Plaintiff's counsel insisted to Wash Depot in early 2006 that he was unwilling to commence settlement negotiations unless Wash Depot offered at least $50,000.00.  *See* Exhibit B.  This unreasonable posture virtually ensured the case could not be resolved short of trial. Meanwhile, as set forth in detail in Wash Depot's Motion for Attorney's Fees [Dkt. 137 pp. 5-7], Plaintiff continually drove up the costs of litigation, such that Plaintiff now claims that over $300,000.00 were expended on the FLSA claim alone.  [Motion at pp. 3, 13.]

In light of the concession that Plaintiff and his counsel considered the overtime claim to be his "main" claim and the small amount of back wage damages that could be claimed, in good faith, the overly aggressive approach to litigation and unrealistic damages positions taken by them suggest, at best, a failure to properly analyze the merits and value of the case and, at worst, an effort to increase the costs and burdens of litigation, neither of which should be rewarded with a windfall in attorneys' fees.

The FLSA provides for an award only of those fees reasonably incurred.  The fees sought by Plaintiff – more than one hundred times the amount he asked the jury to award –

---

[4] Plaintiff originally named an individual manager (a Florida citizen) as a defendant in the state action alleging discrimination and retaliation, apparently for the purpose of defeating diversity jurisdiction.  After the individual manager filed a motion to dismiss based on the well-established legal premise that individuals are not liable under the statutes at issue, Plaintiff dropped the individual defendant from the case, and the case was removed.

cannot be deemed "reasonable" in any sense of the word.  For the reasons explained above and under the rationale of *Goss*, the Court should deny Plaintiff's motion for fees.

**B.     Even If Plaintiff Is Entitled To Some Attorneys' Fees, The Amount Requested Is Grossly Excessive, Under Applicable Law**

Even if the Court decides to award some attorneys' fees to Plaintiff, the Court should not award more than a small fraction of the amount requested, because the lodestar requested by Plaintiff is excessive and unsupported, and because the factors established by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) and its progeny require reduction of the lodestar.[5]

**1.     The Lodestar Requested By Plaintiff is Excessive**

Assuming the Court decides to award some attorneys' fees to Plaintiff, the first step in determining the amount of the award it to calculate the lodestar, by multiplying the number of hours *reasonably* expended by a *reasonable* hourly rate. *Duckworth*, 97 F.3d at 1396; *Norman*, 836 F.2d at 1299, 1302.  The lodestar requested by Plaintiff should be significantly reduced because both the hours and the rates Plaintiff claims are unreasonable, and because Plaintiff has not submitted adequate evidence to support the hours worked.

**a.     The Hours Requested By Plaintiff Are Excessive**

In the Eleventh Circuit, *Hensley* and *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988), prescribe the law for determining the appropriate award of attorney's fees. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).   Under those cases, the Court must first determine the number of hours reasonably expended. *Hensley*, 461 U.S. at 433.

The district court "should exclude from th[e] initial fee calculation hours that were not 'reasonably expended.'" *Hensley* at 434.  Significantly, where a plaintiff presents "in one lawsuit distinctly different claims for relief that are based on different facts and legal theories . . . counsel's work on one claim will be unrelated to his work on another claim. . . . [W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of

---

[5] The standards established by *Hensley* "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 n.7.

the ultimate result achieved.' . . . [T]hese unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]." *Id.* at 434-35.[6]   As mentioned above, Plaintiff and his counsel tacitly admit this controlling law, and also that under this law they are entitled to, at most, only those fees expended in pursuit of the FLSA back wage claims.

### 1)   The Fee Request Includes Hours Clearly Expended On Unsuccessful Claims

Although Plaintiff and his counsel make the conclusory assertion that they seek only fees incurred in connection with the successful claim for failure to pay overtime, it is clear from examining the submitted billing records that they have included fees for work that is, on its face, completely *unrelated* to the FLSA back pay claims, in other words, fees incurred solely in connection with claims on which Wash Depot prevailed.[7]

First, Plaintiff and his counsel seek fees for 5.1 hours in connection with representation of Plaintiff at the unemployment hearing in this matter,[8] where the only issue involved the reason for Plaintiff's termination and whether Plaintiff had engaged in misconduct.  In fact, the unemployment hearing transcript contains no reference at all to anything regarding wages or hours worked by Plaintiff.

---

[6] Plaintiff cannot claim that his work on other claims was interrelated and necessary to the prosecution of the only claim on which he prevailed, his FLSA overtime claim.  Plaintiff could have fully litigated the overtime claim without litigating, e.g., his internal complaints, his having been disciplined and discharged from employment, the alleged nexus between his complaints and his discipline and discharge, the quality of his work, his allegations of race discrimination, etc.  In contrast, and as explained more fully in Defendant's motion for fees, defense of the FWA claim upon which Defendant prevailed necessarily required defense not only of the discipline and termination decisions but also of all of the underlying claims of unlawful conduct and motivation.

[7] Some work does appear to have been removed from the billing records; i.e., work related to the depositions of two customers whose testimony was relevant only to termination, and work related to motions in limine that were directed at evidence on the race discrimination claims.  However, the amount of work that is obviously unrelated to the overtime claims, coupled with (as set forth further below) the failure to reduce any hours expended on work that involved multiple claims shows a systemic failure to reasonably allocate fees.

[8] *See* time entries dated 7/1/05, 7/5/05, 7/6/05, 7/7/05.

Second, Plaintiff and his counsel seek fees for at least[9] 1.6 hours of work in connection with removal of the state claims and consolidation of the two cases in this matter.[10]  However, consolidation was an issue in this case only because Plaintiff and his counsel chose to file a separate lawsuit in a separate court asserting discrimination, retaliation, and FWA claims; no work on consolidation would have been incurred solely in prosecution of the overtime claim.

Third, Plaintiff and his counsel seek fees for at least 8.9 hours of work in connection with a motion to compel unemployment records filed by Wash Depot after the close of discovery in this case.[11]  That issue dealt only with mitigation issues related to Plaintiff's termination, and was entirely unrelated to the claim for overtime.

Fourth, Plaintiff and his counsel seek fees for 4.5 hours of work in connection with a response Plaintiff filed opposing Wash Depot XV's motion for entry of judgment.[12]  Wash Depot XV was a defendant only in Plaintiff's state law discrimination and retaliation claims, and when the summary judgment in its favor was inadvertently not reflected in the Court's Final Judgment, it moved for judgment.  Plaintiff's opposition to this motion had no connection whatsoever to his FLSA back wage claims.  Moreover, the Court opined in its Order on that motion that Plaintiff's opposition was frivolous [*See* Dkt. 156, n.1]; accordingly, Plaintiff should not be entitled to recover such fees.

Finally, Plaintiff and his counsel also seek fees for 4.0 hours of work in connection with Plaintiff's Motion for Judgment as a Matter of Law and Motion for a New Trial on his minimum wage claims.[13]  This motion, by definition, involved only Plaintiff's unsuccessful

---

[9] Some of the fee records reflect work on the consolidation motion that has been grouped together with other work, and thus is impossible to determine the precise amount of hours. On other occasions, consolidation is referenced in stand-alone entries. Accordingly, Wash Depot concludes that at least the total number of stand-alone hours was incurred on removal and consolidation, with more such time that is incalculable. This pattern is true for each time herein where Wash Depot describes time as "at least" X number of hours.

[10] *See* time entries dated 2/20/06, 5/1/06, 5/4.06, 5/10/06, 5/15/06.

[11] *See* time entries dated 10/27/06, 10/31/06, 11/6/06/ 11/7/06, 11/8/06.

[12] *See* time entry dated 12/5/06.

[13] *See* time entry dated 12/14/06.

claim for minimum wage; the hours expended are not compensable fees in connection with his overtime claim.[14]

### 2) Where Work Was Performed On Multiple Claims, Plaintiff Has Not Properly Allocated Time To The Single Successful Claim

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley* at 437. Therefore, Plaintiff must "submit evidence supporting the hours worked and rates claimed." *Id.* at 433. Because Plaintiff's right to fees, if any, is limited to fees incurred in pursuit of the claim on which he prevailed, to meet this burden he must establish a basis for allocating services rendered to the claim on which he prevailed. This Plaintiff has not done and, as explained more fully below, a review of his counsel's billing records show that for many of the entries for which fees are sought, it would be impossible to do so.

Instead, in cases where the entries make it clear that they include work performed in pursuit of multiple claims Plaintiff and his counsel have simply allocated all of such time to the FLSA back wage claims. Plaintiff simply seeks all fees for any work performed that may have touched, however briefly, on the overtime claim, even if the overwhelming majority of the work dealt with the unsuccessful claims.

Perhaps the most egregious example of Plaintiff's failure to allocate time is his seeking fees for 64 hours of work in connection with responding to Wash Depot's Motion for Summary Judgment.[15] However, a simple review of Plaintiff's Response demonstrates that approximately 90% of the Response is devoted to opposing summary judgment on the discrimination and retaliation claims, while only 10% – approximately two pages out of twenty – are related to Plaintiff's wage claims under the FLSA. Ultimately, of course, Wash Depot prevailed at summary judgment on the claims of discrimination and retaliation – so the Motion essentially seeks somewhere around $20,000.00 in fees for work on a motion for summary judgment on claims where Defendant, not Plaintiff, prevailed.

---

[14]   A summary of the hours billed which are unrelated to the overtime claim on the face of the time entries is attached hereto as Exhibit "C," and all such hours must be deducted from the lodestar.

[15] *See* time entries dated 9/10/06 -9/14/06, 9/19/06-9/22/06.

This problem with lack of allocation is not limited to the hours requested for work opposing summary judgment. Rather, it is pervasive throughout the billing records. As just one more example, Plaintiff and his counsel seek fees for more than 22 hours of work associated with the deposition of Andrew White;[16] however, out of 220 pages of deposition, only 69 include questions that have anything to do with Plaintiff's overtime claims or with general question regarding background, etc. In fact, it appears that Plaintiff and his counsel have made no effort whatsoever to reduce the hours for which fees are sought for *any* deposition included in the Motion, resulting in a sum total of more than 80 hours expended in deposition-related work. However, Plaintiff's counsel spent great amounts of time at the depositions inquiring about alleged disparate treatment based on race, alleged whistleblowing, Defendant's motivation for Plaintiff's discipline and discharge and other issues having nothing to do with the FLSA back wage claims.

Likewise, Plaintiff and his counsel seek fees for more than 70 hours in general pretrial work[17] during the period preceding the summary judgment ruling, with no effort to reduce or allocate time to reflect the fact-intensive discrimination and retaliation claims that still remained in the case at that time. Clearly, such hours would not have been necessary in pursuit of a single claim for failure to pay overtime for a 30-week period, with only a couple of thousand dollars at stake; and, in fact, the deposition transcripts demonstrate that large quantities of time were devoted to questioning on the discrimination and retaliation claims.

Ultimately, in fact, ***nearly all*** of the hours expended in this case prior to the summary judgment order were performed in pursuit of multiple claims,[18] including unsuccessful claims, with the exception of a very few records that expressly reference topics such as research regarding the overtime exemption at issue. Instead of properly segregating the fees incurred in pursuit of the overtime claim, Plaintiff and his counsel seek recovery for large amounts of time expended in prosecution of Plaintiff's failed claims for discrimination and

---

[16] *See* time entries dated 5/15/06, 5/16/06, 5/19/06, 5/21/06.
[17] Hours clearly allocated to the overtime claim, such as work on the motions in limine regarding the DRB records, are excluded from this number.
[18] This includes hours expended prior to the initiation of the state case, as the initial complaint in federal court claimed retaliation under the FLSA and the FWA.

retaliation. Their position appears to be that they are entitled to all fees for any work performed, if they could possibly argue that facts or issues related to the overtime claim might have come up somewhere in the course of the listed hours (for however brief a period of time). This approach is completely inconsistent with the well-recognized principle that a party may not recover fees incurred in pursuit of unsuccessful claims just because they happen to have prevailed on a small piece of the case. *See, e.g., Hensley* at 433-34. Because nearly all of the hours for which recovery is sought included work on failed claims, the lodestar hours must be significantly reduced.

Admittedly, Plaintiff may have been forced to take this approach because his counsel's records do not permit any principled segregation of time spend in pursuit of the various claims. But it is Plaintiff's burden to present sufficient evidence to support his claim for fees. According to the Supreme Court, "[t]he applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* at 437. "Where the documentation of hours is inadequate, <u>the district court may reduce the award accordingly</u>." *Hensley* at 433 (emphasis added).

### 3) Hours Reflected In Vague Time Entries Cannot Be Recovered

Generally, time entries too vague to discern reasonableness and legitimacy should be deducted from a fee award. *See, e.g., McLaughlin v. State of N.Y.,* 79 F.E.P. Cases (BNA) 9, 12 (N.D.N.Y. 1998) (reduction for vague entries like "reviewing client documents," "creating chronologies" and "examining depositions"). Moreover, the vagueness of time entries takes on a particularly important character in this case, as the vagueness of time entries also makes it impossible to determine whether the time reflected in the entries advanced the successful overtime claim or whether it was simply more time expended on the unsuccessful claims that should not be compensated. Plaintiff's fee request includes a number of time entries that are entirely ambiguous both with respect to what claims counsel was working on and what work was being performed – such as entries that simply say "Review documents" or "Prepare letter to Shane Muñoz re various issues." Accordingly, all such hours (summarized on the attached Exhibit "D") must be deducted from the lodestar.

### 4) Hours Expended On Claims That Survived Summary Judgment Are Also Unreasonable

Fee applicants, like all lawyers who bill clients on an hourly basis, are obligated to exercise "billing judgment" in identifying the hours reasonably expended in a case. *See Hensley*, 461 U.S at 434. Attorneys' fees should be awarded only for those hours that were reasonably necessary to prosecute a matter. *Hensley*, 461 U.S. at 433-34.

As mentioned at the outset, Plaintiff claims that his fee request is limited to fees incurred in pursuit of his FLSA claims, and claims entitlement to fees equal to more than one hundred times the amount of his damages. As also explained above, this excessive demand results in large part from the fact that Plaintiff claims fees for work performed solely on other claims and for work where Plaintiff has not made any reasonable allocation of time between the overtime claim and the claims on which Defendant prevailed.

Even as to work performed on the overtime and minimum wage claims after entry of summary judgment, the fees Plaintiff seeks are clearly excessive. Plaintiff and his counsel seek fees for more than 115 hours of work between November 21, 2006 (the date on which summary judgment was granted in favor of Wash Depot on Plaintiff's claims of discrimination and retaliation under the FLSA, FCRA, and the FWA) and the conclusion of the trial. Accordingly, even assuming the lowest hourly rate at issue (though all counsels' hourly rates are involved), Plaintiff and his counsel are seeking in excess of $43,000.00 for preparation for trial of two claims whose total value – based on the amount Plaintiff requested at trial – was less than $3,500.00, and only one of which Plaintiff prevailed on. On its face, these hours are unreasonable.

Likewise, Plaintiff and his counsel seek fees for more than 47 hours for work on Plaintiff's motion for summary judgment, which was directed only to the minimum wage and overtime claims. Even calculating this time at the lowest hourly rate sought (when in fact all counsel were involved in the work), this amounts to a claim of nearly $18,000.00 in fees for an unsuccessful motion directed only at claims valued under $3,500.00. Because these hours are clearly unreasonable in light of the value of the claims, a reduction to the lodestar should be made.

The amount of time expended between summary judgment and trial becomes more unreasonable when the records are closely reviewed, in view of the unnecessary work performed by more than one attorney. Mr. Kleppin was the member of Plaintiff's counsel who tried the entire case. However, Plaintiff and his counsel chose to have Mr. Boreth, an attorney of more than 40 years' experience, attend the trial for most of three full days and sit in the courtroom, although he examined no witnesses and did no other visible courtroom work other then to occasionally whisper in Mr. Kleppin's ear.[19] Mr. Boreth seeks an hourly fee of $450.00 per hour, resulting in a charge of $12,150.00 for his presence in the courtroom (more than three times the amount Plaintiff asked the jury to award). Mr. Boreth's time spent attending trial must be deducted from the lodestar calculation.[20] *See, e.g., Lalla v. City of New Orleans,* 161 F. Supp. 2d 686 (E.D. La. 2001) (cutting preparation, research and attendance time where attorney simply observed co-counsel file motions, handle depositions and argue at hearings); *Martin v. Cavalier,* 48 F.3d 1343 (4th Cir. 1995) (time excessive where attorney did not examine any witnesses).

### 5)    Other Unreasonable Charges

Finally, Plaintiff and his counsel also seek hours which are unreasonable for a myriad of other reasons. For example, in addition to the hours of Mr. Boreth charged during the trial, there are several other instances where more than one attorney unnecessarily attended events such as deposition or mediation.[21] *See Duckworth,* 97 F.3d at 1398 (approving reductions for duplicative attendance at depositions). Any such hours must be deducted from the lodestar. Plaintiff and his counsel also make no deduction or reduction for travel time, although it is apparent that at a minimum travel time was billed for the depositions of Mr.

---

[19] In contrast, when Wash Depot learned of the summary judgment ruling, it determined it would be improper to have two attorneys attending trial on claims with so little value.

[20] Deductions from the lodestar may occur where a litigant is represented by more than one lawyer and the lawyers unreasonably perform the same work. *Norman,* 836 F.2d at 1301; *ACLU of Ga.,* 168 F.3d at 432. Where more than one attorney is involved, the applicant must demonstrate that the time requested reflects the distinct contribution of each attorney, and the customary practice of multiple lawyer litigation. *ACLU of Ga.,* 168 F.3d at 432.

[21] *See* time entries dated 10/10/05 (two attorneys charging over 8 hours each to attend mediation on FLSA and FWA claims); 4/28/06 (two senior attorneys charging 6.0 hours each for attendance at Plaintiff's first day of deposition).

White and Ms. Hopkins, which took place in Tampa.[22]  Courts have recognized that an attorney should not charge a top billing rate for travel time, and that 50% of a standard hourly rate is generally appropriate. *See, e.g., Shapiro v. Textron*, 73 Fair Emp. Prac. Cas. (BNA) 658, 660 (E.D. La. 1997); *Lambert v. Fulton Co.*, 151 F. Supp. 2d 1364, 1370 (N.D. Ga. 2000); *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 213 n.6 (S.D.N.Y. 2001) *aff'd* 47 Fed. Appx. 363 (3rd Cir. 2002).  Accordingly, any hours attributable to travel must be calculated at a reduced rate in calculating the lodestar.

**b.**    **The Hourly Rates Requested By Plaintiff Are Unreasonable**

**1)**    **Mr. Kleppin's Requested Hourly Rate Is Unreasonable**

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *See Hensley*, 461 U.S. at 433; *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).  The Court may use its own expertise to determine the appropriate hourly rate. *See Scelta*, 203 F. Supp. 2d at 1331; *Lambert v. Fulton Co.*, 151 F. Supp. 2d 1364, 1373 (N.D. Ga. 2000).  Courts are mindful of their duty to calculate fees conservatively in order not to provide a windfall to plaintiffs' attorneys. *See Manning v. School Bd. of Hillsborough County*, 851 F. Supp. 436, 445 (M.D. Fla. 1994); *Manning v. School Bd.*, 135 F. Supp. 2d 1192, 1197 (M.D. Fla. 2001).

Here, Mr. Kleppin seeks an hourly rate of $375.00 per hour, despite having practiced employment law for less than four years (and practicing for less than six years in total). *See* Kleppin Aff., Ex. 4 to Motion, at ¶ 5. By Plaintiff's own argument, expertise and experience – particularly in the specialized area of law relevant to the case – are significant factors in assessing the reasonableness of an hourly rate. [*See* Motion at pp. 9-10.]  Mr. Kleppin's four years of experience practicing employment law simply do not support his requested hourly rate of $375.00.  As demonstrated by Mr. Casey's expert affidavit (submitted in support of Defendant's motion for fees), an attorney with less than eight years of experience in the

---

[22] *See* time entries dated 5/19/06, 8/8/06.

relevant community typically commands an hourly rate equal to or less than $270.00.[23]  Even Plaintiff has cited no authority for the proposition that an attorney with less than four years of experience in the relevant field of law, and less than six total years of experience, can reasonably be paid $375.00 an hour.   Rather, he relies only on the "expert" affidavit submitted by Peter Mavrick; ironically, the hourly rate claimed by Mr. Kleppin is *higher* than the hourly rate of Mr. Mavrick, a fourteen-year attorney who avers that he has broad experience in employment law. *See* Mavrick Aff. at ¶ 3.

Moreover, the suggestion that Plaintiff's counsels' "skill (in defeating Defendants' counsel)" justifies a high hourly rate is untenable in light of the results in this matter. Plaintiff claimed to have suffered more than $630,000.00 in damages.   Plaintiff obtained judgment on a single claim, for less than $2,000.00 (prior to doubling for liquidated damages).   All of Plaintiff's other claims failed, most of them at the summary judgment stage.   As to the one claim where Plaintiff prevailed, Plaintiff's counsel has repeatedly intimated that the defense was substantially impaired by Defendant's failure to keep accurate records, so much so that Plaintiff's counsel argued that summary judgment should be entered in Plaintiff's favor on the issue of FLSA liability.   With this evidence, the fact that Plaintiff prevailed on a single claim for a miniscule part of his damages is hardly a ringing endorsement, and does not support a finding that Plaintiffs' counsel is entitled to a particularly high hourly rate, and certainly not to the $375.00 rate sought by Mr. Kleppin.[24]

Finally, Plaintiff's analogy to the *Bernstein* case is unpersuasive.  First, Plaintiff states that the order determined that a five-year attorney was entitled to an hourly rate of $300.00, but he is seeking an hourly rate 25% higher than that even though he is approximately the same level of experience. More significantly, the cited order, attached hereto as Exhibit E, does not even describe the years of experience of the attorneys to whom

---

[23] Plaintiff's counsel's attempt to distinguish Mr. Kleppin as a "partner" is meaningless. Regardless of what title is bestowed upon Mr. Kleppin by his firm, his level of experience is the proper issue in determining whether his rate is reasonable.

[24] The Court, of course, may form its own perceptions about an advocate's skill and use those perceptions to inform any assessment of reasonable rate.  Wash Depot simply suggests that Plaintiff's counsel's reliance on the *results* of the matter as evidence of "skill" justifying an exorbitant hourly rate is improper here.

it awarded fees, and thus does not assist the Court. It is also interesting to note that in this 2006 matter, Mr. Mavrick – the same expert set forth by Plaintiff and his counsel here – apparently opined on behalf of the same counsel in opposition to a fee petition that the <u>highest</u> rate charged by any employment lawyer in the Southern District was $350.00.[25] Finally, simply because the Court found that a particular attorney found to be "exceptional" and "experienced" could command a certain fee rate does not mean that all attorneys in the same range of years of experience will justify the same rate. Mr. Kleppin's purported rate is unjustifiable in light of his relative lack of experience and lack of success, and must be reduced.

### 2)    Other Unreasonable Rates Are Requested

A lawyer is not entitled to compensation at attorney rates for work that is clerical in nature or work that is customarily done by paralegals, and the district court may award reduced rates for such activities. *Norman*, 836 F.2d at 1306. The dollar value of work that can be accomplished by non-lawyers is not enhanced simply because a lawyer does it. *Johnson*, 488 F.2d at 717. *See also Luciano v. Olsten*, 925 F. Supp. 956 (E.D.N.Y. 1996) (no top rate for paralegal work). "Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Lang*, 1997 U.S. Dist. Lexis at *6 (M.D. Fla. 1997). *See O'Rourke v. City of Providence*, 235 F.3d 713, 7137 (1st Cir. 2001) (affirming lower rate for work accomplished that did not justify the rate claimed).

Here, the time entries submitted demonstrate that senior attorneys, sometimes even attorneys with 30 or 40 years of experience, charged time for tasks that could be performed by a less senior attorney or even a paralegal, such as drafting discovery requests, performing

---

[25] *See* Order Awarding Fees And Costs, *Bernstein v. Boies, Schiller & Flexner LLP et al.*, Case No. 05-61126 (unpublished), Exhibit E, at p. 2. Notably, this seems to establish that the rates Plaintiff and his counsel are currently seeking from $375.00 to $450.00 an hour are not their historical rates, as Plaintiff's counsel apparently believed in 2006 that $350.00 was the ceiling for local rates for employment attorneys.

internet searches, preparing calendars of dates, and proofreading.[26] Such time is not reasonably expended and must be deducted from the lodestar.

**C.** **The Lodestar Must Be Significantly Reduced For Lack Of Success**

After determining the lodestar, the court may adjust the amount depending upon a number of factors. *Hensley*, 461 U.S. at 434-437; *Duckworth*, 97 F.3d at 1396, 1399; *Norman*, 836 F.2d at 1302; *Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994). The most important of these factors is the degree of Plaintiff's success. *Andrews v. United States*, 122 F. 3d 1367, 1375 (11th Cir. 1997); *see also Hensley* at 438 n.14 ("the extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of fees to be awarded"). Accordingly, if the result obtained is partial or limited success, then the lodestar *must* be reduced to an amount that is reasonable in relation to the results obtained.[27] *Hensley*, 461 U.S. at 440; *Norman*, 836 F.2d at 1302.[28] The district court may accomplish this reduction either by "identify[ing] specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

In cases where the plaintiff's recovery was near 1% of the amount of damages sought, the Eleventh Circuit has recognized that fee awards should closely correlate with

---

[26] *See, e.g.,* time entries dated 8/19/05, 9/2/05, 12/29/05, 5/11/06, 11/15/06.

[27] Plaintiff's contention that the lodestar should be adjusted *upward* is entirely unreasonable in light of the factors set forth in this motion, and must be rejected. Plaintiff argues that an adjustment should be made to compensate for delay in payments, but acknowledges that the U.S. Supreme Court has found that delay in payment may be addressed by calculating the award based on current rates. Here, Plaintiff's lodestar calculation is based on current rates – not rates charged through the history of the case. *See* Exs. 2-4 to Motion, *see also* Section II(B)(1), supra, at n26. Accordingly, there is no need for an upward adjustment to compensate for delay in payment. In addition, Plaintiff's reliance on the *Davis* case conflates the issue of delay in payment with the issue of the contingency fee arrangement. Since the *Davis* decision, it has been established that enhancement for contingency arrangements is no longer available. *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1186 (11th Cir. 1993). Plaintiff's assertion that an upward adjustment is warranted must be rejected; to the contrary, as set forth herein, a downward adjustment is necessary due to Plaintiff's lack of success.

[28] Such a reduction is appropriate even if the unsuccessful claims are related to the successful claim. *Popham v. City of Kennessaw*, 820 F.2d 1570, 1579-80 (11th Cir. 1987) (citing Hensley).

the damages recovered in order to account for the limited success. In *Popham v. City of Kennessaw,* 820 F.2d 1570 (11th Cir. 1987), the plaintiff sought $2 million in compensatory damages, but the jury awarded only $30,000. Despite finding that the hours and hourly rate claimed were reasonable, the district court awarded only $16,965.15 in attorneys' fees, approximately ½ of the amount awarded in damages. The Eleventh Circuit noted that the award was only 1½ % of the amount sought by the plaintiff, and affirmed the district court's award. *Id.* at 1581.

In *Andrews*, the plaintiffs sought $3.5 million in damages, but obtained an award of less than $50,000. The district court awarded approximately 3½ times the damages recovered – $180,880.00 – in fees and expenses (the district court fee award was approximately 12% of the fees sought by the plaintiff). On appeal, the Eleventh Circuit noted that the relief obtained by the plaintiffs was approximately 1% of the amount they had sought in damages and held that the "district court abused its discretion by not giving greater weight to plaintiffs' limited success." *Andrews*, 122 F.3d at 1375. Accordingly, the Eleventh Circuit vacated the district court's fee award.

The analyses in *Popham* and *Andrews* make clear that, when a plaintiff experiences such little success, an award of fees that is close in amount to the damages recovered may be appropriate, but that an award of 3.5 times the amount recovered is excessive. Courts have reached similar results on claims under the FLSA. *See, e.g., Diver v. Goddard Memorial Hospital*, 783 F.2d 6 (1st Cir. 1986) (plaintiff who sought $125,000 in damages on claims including wrongful discharge and contract claims, but prevailed only on overtime claim in amount of $369.00, was entitled to only $1,000.00 in attorneys' fees).

Here, Plaintiff sought more than $630,000.00 in fees on his six claims. He ultimately prevailed on only one claim, for a total judgment of approximately 0.5% of the damages sought, $3,493.62 including liquidated damages. Plaintiff asks the Court to award fees more than one hundred times the amount of his damages. Accordingly, the Court should find that the attorneys' fees were not reasonably incurred in the pursuit of Plaintiff's claims or, if the Court concludes that any fees should be awarded, the Court should reject Plaintiff's proposed

lodestar and calculate the lodestar in light of the factors described above, and should substantially adjusted the lodestar downward to reflect the lack of success.

### III.   CONCLUSION

For the foregoing reasons, Wash Depot respectfully requests that the Court deny Plaintiff's and his counsels' Motion, or alternatively, reduce the lodestar for the reasons set forth above and make a significant downward reduction to the lodestar to reflect the lack of success of Plaintiff's claims, in accordance with *Popham* and *Andrews*.

Respectfully submitted,

/s/ Shane T. Munoz
Peter W. Zinober
Florida Bar No. 121750
pzinober@zmlaw.com
Shane T. Munoz
Florida Bar No. 67024
smunoz@zmlaw.com
Jaimi L. Kerr
Florida Bar No. 18827
jkerr@zmlaw.com
ZINOBER & McCREA, P.A.
201 E. Kennedy Blvd., Suite 800
Tampa, FL 33602
(813) 224-9004 Telephone
(813) 223-4881 Facsimile
Attorneys for Defendant

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 2, 2007 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Chris Kleppin, Esq., Attorney for Plaintiff.

/s/ Jaimi L. Kerr
**Attorney**

00515524.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60822-CIV-DIMITROULEAS/TORRES

RODNEY JAMES, and all others similarly
situated,

       Plaintiff,

v.

WASH DEPOT HOLDINGS, INC. a Delaware
Corporation qualified to business in the State of
Florida.

       Defendant.

_____/

## PLAINTIFF'S FIRST SUPPLEMENTAL RULE 26 INITIAL DISCLOSURES

Plaintiff, Rodney James, by counsel, submits his initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement and/or amend his responses upon further factual and legal investigation and otherwise as required or deemed necessary.

(A)    The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

See Exhibit "A" attached hereto.

(B)    A copy of, or a description by category and location of, all documents, data compilations, and tangible things in Plaintiff's possession, custody, or control, that Plaintiff may use to support his claims or defenses, unless solely for impeachment.

See Exhibit "B" attached hereto.

(C)    A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other



EXHIBIT
A

evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

See Exhibit "C" attached hereto.

(D)    For inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable to Plaintiff.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been duly furnished *via Fed EX* by U.S. mail to: Peter W. Zinober, Esq., Zinober & McCrea, P.A., 201 East Kennedy Boulevard,

Suite 800, Tampa, Florida 33602 this *7th* day of February, 2006.

> Glasser, Boreth, Ceasar & Kleppin
> Attorneys for Plaintiff
> 8751 W. Broward Blvd
> Suite 105
> Plantation, FL 33324
> Tel. (954) 424-1933
> Fax (954) 474-7405
> E-mail: Glabor@aol.com

> By_____
> Chris Kleppin
> Fla. Bar No. 625485

C:\MyDocuments\James\Plaintiff'sInitialDisclosures02/07/06

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 05-60822-CIV-DIMITROULEAS/TORRES

RODNEY JAMES, and all others similarly
situated,

      Plaintiff,

v.

WASH DEPOT HOLDINGS, INC., a Delaware
corporation qualified to do business in the State of
Florida,

      Defendant.

_____/

## DAMAGES

    Plaintiff seeks damages in the above matter consisting of back pay, front pay, loss of

future earning capacity, liquidated damages, compensatory damages, punitive damages,

attorneys' fees, and costs.

    For the Fair Labor Standards Act overtime and wage rate claims, back pay is the amount

of overtime that Plaintiff was denied, which is time and one-half for each hour and part of an

hour worked over 40 in a workweek, as set forth in the Eleventh Circuit Jury Instructions.

Liquidated damages are the amount of back pay doubled.  Initially, concerning the wage rate

claim, James is entitled to be paid for the time that he worked for which he was not paid at all.

Those hours are approximately 30 per week.  James's average pay appears to have been

approximately $12.00/hr.  James is seeking this compensation for approximately 30 weeks.

Therefore, James is owed $360.00 per week.  Because he worked for 30 weeks, he seeks 30

weeks x $360.00/wk = $10,800.00.

James is entitled to the following amounts for overtime:   According to the Eleventh Circuit's jury instructions with respect to the calculation of back pay in an overtime case under the FLSA, James will use the following method to calculate his damages:  James worked as a CSR/Greeter for 30 weeks for which he seeks overtime.  The Defendant did not keep track of the number of hours that James worked.  James estimates that he worked approximately 55 hours per week.  James's total income for those 30 weeks was approximately $10,509.36. The amount of income that James was denied must be added to those total $10,800.00 + $10,509.36 = $21,309.36. Accordingly, using the Eleventh Circuit's Pattern Jury Instructions, James's hourly rate is calculated as follows:   $21,309.36 ÷ 30 weeks = $710.31/week.   $710.31/wk ÷ 40 hours/week = $17.75/hr.   James's overtime rate is $17.75/hr x 1.5 (overtime rate) = $26.63. James's overtime rate ($26.63/hr) multiplied by the number of overtime hours per week 15 that he worked equals $399.45 in unpaid overtime per week.  Because James worked for 30 weeks, he is owed $11,983.50 in overtime ($399.45 x 30 = $11,983.50).   Doubled for liquidated damages equals a total of $23,967.00 that James is owed for overtime.

Back pay (under the Fair Labor Standards Act for James's termination claim) consists of the difference in pay (plus benefits) currently being earned by James, compared to the pay that James should have earned had he not been terminated, calculated on a quarter-to-quarter basis, as set forth in Eleventh Circuit case law.  Back pay is calculated from the time that James was discriminated against to the date of judgment.  James is presumptively entitled to back pay. James should have been earning (had he been paid properly under the law) approximately $1,070.31 per week at the time that he was terminated.  Since James was terminated on or about February 16, 2005, as of the date of this submission (February 3, 2006), that period of time encompasses twenty (50) workweeks.  James is owed full back for approximately 22 of those

2

weeks, because he was not working during that time. James back pay for those weeks is

$1,070.31 x 22/wks = $23,546.82. Under the FLSA, this amount is subject to liquidated

damages. However, for the last approximately twenty (28) weeks, James has earned

approximately $400.00 per week. This amount is deducted from James's back pay total. For

those 28 weeks, James's back pay for his termination claim at this time is $1,070.31/wk x 28 wks

= $29,968.68. Moreover, James has earned (received as of February 3, 2006) approximately

$9,829.89 since he was terminated. Therefore, at this time, James's back pay is approximately

$29,968.68 - $9,829.89 = $20,138.79. This figure increases daily.

With respect to front pay, front pay is calculated on the same basis as back pay, but runs

from the date of judgment until Plaintiff is placed in his rightful position, or such time as he

obtains a position in which he earns an amount equivalent to what he would have earned if he

had not been terminated. Plaintiff is presumptively entitled to front pay. At the current time,

James believes that a fair award of front pay would be the difference between what he earned (if

he had been paid properly under the FLSA) while he worked for Defendant (approximately

$4,634.44 per month at the time he was terminated) and what he is currently earning

(approximately $1,500.00 per month). $4,634.44 - $1,600.00 = $3,034.44 per month. James

seeks front pay for five (5) years. Thus, James intends to seek front pay totaling $3,034.44/mo. x

60mos. = $182,066.53.

Plaintiff is entitled to be awarded monies for lost future earnings capacity. Determining

the amount of lost future earnings capacity is solely within the province of the jury. As to lost

future earning capacity, because James was terminated and forced to sue and had his career

affected in a negative way he will be damaged for the rest of working life when he attempts to

find gainful employment and seeks advancement within that employment. Accordingly, James

believes that he has been damaged in the amount of one hundred thousand dollars ($100,000.00) with respect to lost future earnings capacity (10 years going forward at an estimated loss of approximately $10,000.00 per year).

Compensatory damages and lost future earnings capacity are not readily amenable to mathematical quantification. Compensatory damages are assessed for pain and suffering, anxiety, sleeplessness, humiliation and the like, according to the EEOC's regulations and policy guidelines. Essentially, compensatory damages are whatever the jury says that they are, no more and no less, as there is no method to calculate such damages to any degree of certainty. Compensatory damages are available for both the § 1981 claims and the overtime claims.

Compensatory damages based upon the pain, suffering, anxiety, humiliation and other adverse reactions which James has experienced on the job, and which he experienced thereafter and continues to experience, and for which James is unable to calculate with exactness, James believes that he has been damaged and entitled to compensatory damages in the amount of three hundred thousand dollars ($300,000.00) at this time. This is based upon the horrendous retaliation which he endured while on the job, the punishment that he had to endure for trying to resolve amicably his complaints of failure to be paid for all of his hours worked and for his overtime. All of these matters have resulted in a painful experience that is impossible for James to forget, and for which he can never be completely adequately compensated.



# GLASSER, BORETH, CEASAR & KLEPPIN

### Attorneys-at-Law

8751 W. Broward Blvd.
Suite 105
Plantation, Florida 33324

Chris Kleppin
Mitchell Ceasar
Harry O. Boreth
Lloyd S. Glasser

Tel    (954) 424-1933
Fax   (954) 474-7405

December 21, 2005

**Via Facsimile 813-223-4881 and Mail**

Shane T. Munoz, Esq.
Zinober & McCrea, P.A.
201 East Kennedy Boulevard
Suite 800
Tampa, Florida 33602

RE:    Rodney James v. Wash Depot Holdings, Inc.
       Our File No. 5-2094

Dear Mr. Munoz:

This is in response to your letter of December 9, 2005 regarding the settlement status of this case.

Shortly after the mediation, your office was substituted as counsel for the Defendant. I advised Mr. Zinober of the continuing efforts of my office and the prior counsel for the Defendant to seek a resolution of the case.

Rather than expressing any interest in resolving the matter, efforts were made by your office to ratchet up the litigation and dispense with settlement efforts.



**EXHIBIT**

B

12/21/2005 15:35 FAX                                                    ⌀002/002

Shane T. Munoz, Esq.
December 21, 2005
Page 2 of 2

While I am pleased that you have expressed interest in seeking a resolution of the matter, your characterization of my client's case is neither accurate nor helpful in seeking an amicable resolution.

If your client wishes to resolve the matter, and is prepared to discuss a settlement in excess of $50,000, please let me know and we will make every effort to work to amicably resolve the matter.

Sincerely,

Chris Kleppin

CK/ess

**WASH DEPOT HOLDINGS**
**ADV. RODNEY JAMES**

**Exhibit C to Response (Fees)**

| <u>DATE</u> | <u>MATTER</u> | <u>ATTY</u> | <u>TIME</u> |
|---|---|---|---|
| 7/1/05 | Telephone conference with Monica at Unemployment Compensation office re: hearing | HOB | 0.2 |
| 7/5/05 | Office meeting with Rodney James to prepare for telephonic hearing on Unemployment Compensation Appeal; telephone conference with Cynthia Johnson re: witness at Unemployment Compensation Hearing | HOB | 1.2 |
| 7/6/05 | Review file and prepare questions for Unemployment Compensation Hearing; telephone conference with Cynthia Johnson as a witness at the hearing | HOB | 1.4 |
| 7/7/05 | Meeting with client; telephonic hearing with respect to Unemployment Compensation Appeal | HOB | 2.3 |
| 2/20/06 | Review letter from Jaimi Kerr and removal petition with attachments | CK | 0.4 |
| 3/24/06 | Review letter from Defendant and Notice of Pendency of Other Action attached | CK | 0.2 |
| 4/1/06 | Review Order transferring case | CK | 0.2 |
| 4/25/06 | Telephone conference with Jaimi Kerr re case consolidation | CK | 0.2 |
| 4/26/06 | Telephone conference with Jaimi Kerr re case consolidation | CK | 0.2 |
| 5/1/06 | Review Defendant's Motion to Consolidate and Stipulated Motion to Consolidate | CK | 0.4 |
| 5/1/06 | Review Defendant's letter with attached draft of Stipulated Motion for Consolidation and proposed joint scheduling report | CK | 0.3 |

| **DATE** | **MATTER** | **ATTY** | **TIME** |
|---|---|---|---|
| 5/4/06 | Review letter from defense counsel; review and revise Joint Motion to Consolidate and Scheduling Report; send letter with signatures agreeing to stipulation; review notes of deposition; letter to Shane Munoz, Esq.; telephone conference with Jaimi Kerr, Esq. re: e-filing of Stipulation; review Subpoenas for deposition | LSG | 1.5 |
| 10/27/06 | Review Defendant's Motion to Compel Production of Unemployment Documents and authorities cited therein. | CK | 3.0 |
| 10/31/06 | Review Order Requiring Expedited Response to Defendant's Motion to Compel | CK | 0.2 |
| 11/6/06 | Review case law on various issues concerning Whether the Defendant's Motion to Compel should be Granted; draft Response to Defendant's Motion to Compel | CK | 5.5 |
| 11/7/06 | Review Defendant's Reply to Defendant's Motion to Compel Production of Unemployment Records | CK | 0.2 |
| 11/8/06 | Review Order Denying Defendant's Motion to Compel Unemployment Records | CK | 0.2 |
| 12/5/06 | Review Authorities on Rule 59(e) and Motions for Judgment or to modify Judgments; draft Response to Defendant's Motion for Judgment | CK | 4.5 |
| 12/14/06 | Draft Post-trial Motion for New Trial and Rule 50(b); review pertinent legal authorities | CK | 4.0 |
| 12/29/06 | Review Defendant's Response to Post-trial Motion | CK | 0.3 |

00515497.DOC

**WASH DEPOT HOLDINGS**
**ADV. RODNEY JAMES**

**Exhibit D to Response (Fees)**

| DATE | MATTER | ATTY | TIME |
|------|--------|------|------|
| 7/12/05 | Telephone conference with Kathryn Moran re Preliminary issues | CK | 0.2 |
| 7/21/05 | Telephone conference with Kathryn Moran | CK | 0.2 |
| 7/27/05 | Telephone conference with Kathryn Moran | CK | .02 |
| 7/29/05 | Telephone conference with Kathryn Moran | CK | 0.2 |
| 8/29/05 | Telephone conference with Curtis Miner | CK | 0.2 |
| 9/16/05 | Telephone conference with Moran re various issues | CK | 0.2 |
| 11/9/05 | Review letter from Shane Munoz re various issues | CK | 0.2 |
| 11/9/05 | Phone call with Shane Munoz re various issues | CK | 0.2 |
| 11/9/05 | Draft letter to defense counsel | CK | 0.2 |
| 12/20/05 | Review letter from Zinober and McCrea; prepare Response | LSG | 0.7 |
| 3/15/06 | Review letter from Jaimi Kerr re various issues | CK | 0.2 |
| 4/13/06 | Draft letter to Shane Munoz re various issues | CK | 0.6 |
| 4/14/06 | Review letter from Jaimi Kerr re various issues | CK | 0.2 |
| 4/14/06 | Review letter from Shane Munoz re various issues | CK | 0.2 |
| 4/19/06 | Review letter from Shane Munoz, Esq. | HOB | 0.2 |
| 4/20/06 | Review and revise letter to Shane Munoz, Esq. | LSG | 0.4 |
| 4/21/06 | Draft letter to Shane Munoz responding to his recent letter | CK | 0.3 |

| **DATE** | **MATTER** | **ATTY** | **TIME** |
|---|---|---|---|
| 4/24/06 | Met with client; draft discovery responses; review file | CK | 5.3 |
| 4/26/06 | Review letter from defense counsel | C | 0.2 |
| 4/27/06 | Draft letter re various issues | CK | 0.6 |
| 4/28/06 | Review letter from defense counsel | CK | 0.3 |
| 4/27/06 | Review fax letter from Shane Munoz, Esq. | LSG | 0.2 |
| 5/5/06 | Review letter from Shane Munoz, Esq. and respond to same | LSG | 0.3 |
| 5/15/06 | Review documents | CK | 3.2 |
| 5/17/06 | Review documents provided by Defendant | CK | 6.3 |
| 6/2/06 | Review letter from defense counsel | CK | 0.2 |
| 6/29/06 | Review letter from Jaimi Kerr, Esq. | LSG | 0.2 |
| 8/16/06 | Review documents provided from Defendant pursuant to subpoenas and other documents | CK | 0.5 |
| 10/27/06 | Review letter from Jaimi Kerr, Esq. | LSG | 0.2 |

00515498.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-61126-CIV-Moore/Garber

CHERYL BERNSTEIN,

     Plaintiff

v.

BOIES, SCHILLER & FLEXNER,
L.L.P., a professional association;
STRATEGIC LEGAL RESOURCES,
INC., a New York corporation; and
STRATEGIC LEGAL RESOURCES,
L.L.C.,a New York limited liability
company,

     Defendant.

_____/



### ORDER AWARDING FEES AND COSTS
### PURSUANT TO 28 U.S.C. §1927

THIS CAUSE was before the Court for consideration of the defendant Boies, Schiller & Flexner, LLP's (BSF) Submission to the Court Identifying Its Costs in Response to the Court's February 2, 2006 Order. The Court has received plaintiff's response in opposition.

The Order entered on February 2, 2006 found *inter alia* that plaintiff's counsel Chris "Kleppin's unreasonable and vexatious conduct has clearly multiplied the proceedings in this case and warrants sanctions pursuant to 28 U.S.C. §1927." Accordingly, the Court granted the defendant BSF's Motion for Sanctions. Pursuant thereto the Court has received a detailed accounting of the costs and fees incurred by the filing of the motion for sanctions and for preparation of other motions that were drafted but never filed in response to various motions filed by Mr. Kleppin on behalf of the plaintiff.

The Court has carefully considered the credentials of counsel for the defendant and



EXHIBIT
E

finds said counsel to be exceptionally qualified in matters similar to that involved in the cause *sub judice*. All of the defendant's counsel have had vast experience in litigation, office practice, legal writing and presentations, and participation in numerous activities related to the practice of law and legal education, with a wide array of clients.

The Court has also considered the affidavit of Peter T. Mavrick, Esquire, submitted as an expert by the plaintiff in opposition to the fees sought as sanctions. Mr. Mavrick's affidavit erroneously claims that the highest hourly rates for employment lawyers in the Southern District of Florida is $350.00. The Court is aware of numerous instances where such amount has been exceeded.

In examining the time records submitted by BSF, with certain exceptions set forth herein, the Court finds that the hours expended by BSF were reasonable and necessary. The Court notes that BSF has claimed 22.5 hours expended in the preparation of its opposition to plaintiff's motion to reinstate.[1]   Such amount is excessive and could have been accomplished in 10 hours, thus requiring a reduction of such amount by 12.5 hours.

Further, several entries of time expended reveal numerous tasks performed without a breakdown as to each specific item.[2]   The Court is unable to determine the appropriateness of such requests. Further, The Court finds that BSF's request for fees for "research EC procedures in Southern District of Florida" must be disallowed as such entry is for the education of counsel in the use of a new filing system utilized by the Court. Such item cannot be charged to the plaintiff.

---

[1]Entries for dates of 10/21/05, 10/22/05, 10/24/05, 10/25/05, 10/26/05, 10/28/05, 10/31/05, 11/02/05 as set forth in defendant's time records.

[2]Examples are entries appearing for the dates of 10/31/05, 11/2/05, 11/21/05, and 12/15/05.

BSF claims to have expended a total of 62.6 hours on the matters for which sanctions have been authorized. The Court finds that such amount must be initially reduced by 12.5 hours, such amount being the amount deemed to be excessive in the preparation of BSF's opposition to plaintiff's motion to reinstate. Thus, the hours expended are reduced to 50.1. In addition thereto, a percentage reduction is appropriate to adjust the hours expended but not specifically designating the time devoted to tasks where multiple tasks are set forth. The court finds that a reduction of ten percent would accomplish such purpose. Accordingly, the Court finds that a total of 45 hours expended were necessary and reasonable.

The Court has also considered the various hourly rates claimed by counsel for the defendant. Based upon the Court's experience with attorney rates for the Southern District of Florida, the Court finds that such requested hourly rates are higher than are usually awarded in this District. Accordingly, the Court finds the following hourly rates to be appropriate:

| | |
|---|---|
| Deborah P. Kelly | $450.00 |
| Asuncion Hostin | 400.00 |
| David Schur | 300.00 |
| Bernard Williams | 300.00 |

Utilizing such hourly rates and applying them to the hours claimed as having been expended by defendant's counsel, prior to any reductions referred to above, the total amount of fees is $21,625.00. Said total amount is further reduced by $3,750.00.[3] Thus, the total base fee is $17,875.00, from which a reduction of ten percent has been found by the Court to be appropriate. Therefore, the total adjusted fees authorized by the Order

---

[3]Said amount has been determined by utilizing the $300.00 hourly rate of Mr. Schur to the excessive 12.5 hours claimed regarding opposition papers to plaintiff's Motion for Reconsideration.

finding sanctions against Chris Kleppin, Esquire, to be appropriate is $16,087.50.

The Court finds that the defendant has met its burden "of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)(*en banc*). The Court has been provided with a basis to determine "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.

In addition thereto, the Court has considered the costs claimed by BSF[4] in the total amount of $387.60 and finds same to be reasonable and necessary.

Accordingly, and upon due consideration of the record, submissions of the parties, and argument of counsel, it is hereby

ORDERED that the defendant Boies, Schiller & Flexner, LLP, have and recover the amount of $16,087.50 as and for attorneys' fees as sanctions, and an additional amount of $387.60 as costs for a total of $16,475.10 from Chris Kleppin, Esquire, said amount awarded in accordance with the previous granting of said defendant's Motion for Sanctions pursuant to 28 U.S.C. §1927. Said sum shall be paid on or before 20 days from the date of this Order.

DONE AND ORDERED in Chambers at Miami, Florida this 23rd day of May, 2006.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

---

[4]Such costs are $337.60 for air transportation for counsel from Washington, D.C. and cab fare in the amount of $50.00.

4

Copies furnished to:
United States District Judge K. Michael Moore
Counsel of record